FILED
U.S. Bankruptcy Court
WDNC, Charlotte, NC

OCT 16 2001

Geraldine Treutelaar Crockett,
Clerk
/asw

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 00-51124 |
| ) | Chapter 11 |
| COLONIAL HEALTH INVESTORS, LLC, ) | |
| d/b/a Mountain Ridge Wellness Center, ) | **JUDGEMENT ENTERED ON OCT 16 2001** |
| ) | |
| Tax Id. No. 56-1914870 ) | |
| ) | |
| Debtor. ) | |
| ) | |

**COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW IN REGARDS TO THE MOTION FOR AUTHORIZATION OF RECOUPMENT FILED BY STATE OF NORTH CAROLINA**

This matter came before the Court on the Motion for Authorization of Recoupment filed by the North Carolina Department of Health and Human Services ("NC-HHS") and the Response thereto filed by Colonial Health Investors, LLC, d/b/a Mountain Ridge Wellness Center (the "Debtor").[1]  A hearing was conducted on this matter on September 25, 2001 in United States Bankruptcy Court for the Western District of North Carolina in Charlotte, North Carolina.

**FINDINGS OF FACT**

Based on the pleadings, the record in this case, evidence presented at the hearing, and arguments of counsel, the Court makes the following findings of fact:

1.  The Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on September 13, 2000. The Debtor continues to operate in the ordinary course of business as a debtor in possession, pursuant to Section 1107 and 1108 of the Bankruptcy Court.

---

[1] NC-HHS also objected to the Confirmation of the Debtor's Chapter 11 Plan of Reorganization. The Confirmation Hearing on this Plan was continued from September 25, 2001 until October 26, 2001. The Objection by NC-HHS is continued until the Confirmation Hearing with all parties reserving their respective rights.

{00080297 v 1}

2. The Debtor is a North Carolina Limited Liability Company that is engaged in the business of owning and operating an inpatient, long term care, skilled and intermediate nursing facility (the "Nursing Home") located in Black Mountain, North Carolina. Currently, there are 100 beds located at the Nursing Home. The operations of the Nursing Home are funded through Medicare, Medicaid, and through private payments, with a majority of funds used in operations coming through the Medicaid program.

3. On April 11, 2001, the Debtor filed its Disclosure Statement and Chapter 11 Plan of Reorganization (the "Plan"). The Disclosure Statement was approved, with amendment, after hearing on June 5, 2001. On August 24, 2001, an Order was entered approving the Disclosure Statement and setting September 25, 2001 for hearing on the confirmation of the Debtor's Plan. The hearing on Confirmation of the Debtor's Chapter 11 Plan has been continued until October 25, 2001.

4. The Debtor participates in the State Medicaid program under which the Debtor receives Medicaid reimbursement payments from the State of North Carolina based upon the estimated costs at the Nursing Home. The Medicaid program is a joint state and federal program under which states provide medical assistance to certain categories of the poor. After the end of each year, the Debtor files cost reports with NC-HHS. Based on these cost reports, NC-HHS will determine if there have been underpayments or overpayments of Medicaid to the Nursing Home. If there have been overpayments, then those amounts will be owed back to NC-HHS.

5. Based on costs reports that have been filed for previous cost-reporting years, the Debtor owes NC-HHS for overpayments that occurred during the years of 1998, 1999, and 2000.[2] The total amount of such overpayments for those years is $461,843.00. At the time that

---

[2] The fiscal years for payments under Medicaid to this Debtor run from October 1 to September 30 of the following year, such that the overpayments in question occurred for the following periods: for 1998 in the period of October

{00080297 v 1}                                            2

the Nursing Home received these overpayments of Medicaid, the Debtor was being managed by Centennial Health Care ("Centennial"), the management company which oversaw all of the day to day operations and finances of the Nursing Home. In September 2000, Centennial Health Care was removed as management company by the owners of the Debtor. Since the removal of Centennial, the Debtor, through its new management company, has monitored its operations and its costs for services to avoid overpayments for such services under the Medicaid and Medicare Programs.

6. By its Motion, NC-HHS seeks to recoup the amount of overpayments set forth above from current and future Medicaid reimbursements due to the Debtor.

7. Based on the undisputed testimony of Charles Trefzger, a principal in the Debtor, if NC-HHS were allowed to recoup such amounts from current and future reimbursements due to the Debtor, the Debtor could not financially continue to operate and the Nursing Home would have to cease operations. In addition, the Debtor would not be able to reorganize under Chapter 11 of the Bankruptcy Code.

8. The resulting closure of the Nursing Home if NC-HHS were allowed to recoup from current and future reimbursements would severely disrupt the care given to its residents and would force the displacement of such residents.

## CONCLUSIONS OF LAW

The Court makes the following Conclusions of Law:

9. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K), and (O).

---

1, 1997 through September 30, 1998; for 1999 in the period of October 1, 1998 to September 30, 1999; and for 2000 in the period of October 1, 1999 through September 30, 2000.

{00080297 v 1}    3

10. NC-HHS seeks to recover amounts due for past overpayments of Medicaid from current and future Medicaid reimbursements to the Debtors based on the doctrine of recoupment. Recoupment is a common law, equitable doctrine defined as "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." University Medical Center v. Sullivan (In re University Medical Center), 973 F.2d 1065, 1079 (3d Cir. 1992), *quoting* 4 Collier On Bankruptcy § 553.03. The doctrine is not found in any express provision of the Bankruptcy Code. Id. Recoupment is justified "where the creditor's claim against the debtor arises from the *same transaction* as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." Id. (*emphasis added*). The question on whether recoupment is justified depends on whether the claims arose out of the "same transaction."

11. While the Fourth Circuit has not addressed the issue of recoupment in the context of overpayments under Medicare or Medicaid, other Courts have addressed this issue. The Court of Appeals for the Third Circuit addressed this issue in the case of University Medical Center v. Sullivan (In re University Medical Center), 973 F.2d 1065 (3rd Cir. 1992). In University Medical Center, the United States Department of Health and Human Services ("US-HHS") sought to recover overpayments to the debtor under the Medicare Act that had been paid to the debtor in 1985 by recouping such overpayments from reimbursements owed to the debtor in 1988, arguing that such was justified under the doctrine of equitable recoupment.

In rejecting US-HHS's claim of recoupment, the Third Circuit found that the doctrine of recoupment should be narrowly construed stating:

> For the purpose of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject

> matter gave rise to both claims . . . does not mean that the two arose from the 'same transaction.'" *Cite omitted.* Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed. *Cites omitted.*

Id. at 1081.    In denying the recoupment by the US-HHS of overpayments in 1985 from Medicare reimbursements in 1988, the Third Circuit went on to state:

> However, each of these transactions begins with services rendered by the provider to the Medicare patient, includes payment to the provider, and concludes with HHS's recovery of any overpayment. Recovery of the 1985 overpayment, therefore, is the final act of the transactions that began in 1985.  UMC's 1988 post-petition services were the beginning of transactions that would stretch into the future, but they were not part of the 1985 transactions.  To conclude that these claims arose from the same transaction for the purposes of equitable recoupment would be to contort that doctrine beyond any justification for its creation.

Id. at 1082.  The Third Circuit concluded that the "1988 payments were independently determinable and were due for services completely distinct from those reimbursed through the 1985 payments" and were therefore not part of the same transaction for purposes of recoupment. Id.

12.    A number of other courts have adopted the rationale of the Third Circuit's decision in University Medical Center and have narrowly construed the doctrine of recoupment. *See* In re Healthback, 226 B.R. 464 (Bankr. W.D. Ok. 1998); In re Sun Healthcare Group, Inc., 245 B.R. 779 (Bankr. D. Del. 2000); In re St. Francis Physician Network, Inc., 213 B.R. 710 (Bankr. N.D. Ill. 1997). *Also see* In re Thompson, 182 B.R. 140 (Bankr. E.D. Va. 1995)(Denied recoupment based on University Medical Center in case involving recoupment of overpayments of disability payments from past years from current payments of disability to debtor), *aff'd without opinion*, 1996 U.S. App. Lex. 19051 (4th Cir. 1995).

13. The D.C. Circuit Court has also addressed this issue adopting a different rationale and with a different result. In the case of U.S. v. Consumer Health Services of America, Inc., 108 F.3d 390 (D.C. Cir. 1997), the D.C. Circuit allowed the recoupment by the government of Medicare overpayments in the years of 1981 and 1982 from Medicare reimbursements due to be paid to the debtor in subsequent years. In rendering its decision and rejecting the University Medical Center decision, the D.C. Circuit focused on the language of the federal Medicare statute, which states in relevant part:

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly) and prior to audit and settlement ... the amounts so determined, *with necessary adjustments on account of previously made overpayments or underpayments.*

42 U.S.C. § 1395g(a)(*emphasis added*). The D.C. Circuit held that, based on this statutory language, the overpayments from previous years must be considered when determining the amount of reimbursements which would currently be due to the debtor for services rendered, indicating that the provider's stream of services were to be considered one transaction for purposes of allowing for equitable recoupment. Id. at 395.

14. The Court believes that the Third Circuit's decision in University Medical Center offers the better rationale in applying the equitable doctrine of recoupment in light of the purposes and goals of Chapter 11 bankruptcy and the Court hereby follows that decision in this case. One of the primary goals of Chapter 11 bankruptcy is the reorganization of the debtor. In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); In re Kings Terrace Nursing Home and Health Related Facility, 184 B.R. 200, 203 (S.D.N.Y. 1995)("The object of Chapter 11 of the Code is to permit a potentially viable debtor to restructure and emerge from

{00080297 v 1} 6

bankruptcy protection."). This goal of reorganization of a debtor must be balanced with the protection of the debtor's creditors, pre and post-petition, as well as the protection of a debtor's employees, and in this case, its residents. Accordingly, Chapter 11 bankruptcy must recognize and protect a broad range of interests. The doctrine of recoupment, on the other hand, protects the interest of only one creditor of a debtor at the expense of the other interests in the bankruptcy case. As the Court has found in this case, if NC-HHS is allowed to recoup from current and future Medicaid reimbursements due to the Debtor, the Debtor will be forced to cease operations and will not be able to reorganize. For these reasons, the Court believes that the Third Circuit's narrow construction and more limited application of the doctrine of recoupment is the proper approach in balancing and protecting the broader interests that must be recognized and protected in a Chapter 11 bankruptcy case.

15. In adopting the rationale of the Third Circuit and declining to follow the D.C. Circuit's decision in Consumer Health Services on the issue of recoupment, the Court notes that the current case is different than the D.C. Circuit's decision in that it involves Medicaid rather than Medicare, such that the statute that the D.C. Circuit relied on in making its decision is not present in this case. Additionally, the Debtor in the present case is continuing to operate and is pursuing reorganization under Chapter 11 of the Bankruptcy Code, as opposed to the debtor in Consumer Health Services, who had ceased to operate.

16. The Court therefore follows the University Medical Center decision and finds that the current Medicaid payments due for this cost-reporting year and future years are separate and distinct transactions from the overpayments due for 1998, 1999, and 2000. Therefore, recoupment is not proper in this case.

17. To the extent that the foregoing findings and conclusions adjudicate factual matters, they are findings of fact. To the extent that the foregoing findings and conclusions adjudicate legal matters, they are conclusions of law.

Pursuant to Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure, a separate final order will be entered in accordance with the foregoing findings of fact and conclusions of law.

_____
United States Bankruptcy Judge



Local Form 9

Rev. 10/1/94

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
<u>Form for Tender of Order or Judgment</u>

#129A

Case Name   <u>Colonial Health Investors, LLC, d/b/a Mountain Ridge Wellness Center</u>

Base Case No.: <u>00-51124</u>  Chapter: <u>11</u>  Adv. Proc. #:

Primary Relief: <u>COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW IN REGARDS TO THE MOTION FOR AUTHORIZATION OF RECOUPMENT FILED BY STATE OF NORTH CAROLINA</u>

*******************************************************************

_____  Consent Order    _____ Order after "No-Protest
                                Notice" with No Objection or Response

_____  Ex Parte Order Submitted with Motion

<u>  X  </u>  Pursuant to Court's Oral Ruling at Hearing on: <u>9/25/01</u>

_____  Other

*******************************************************************

<u>  x  </u>  No Opposing Counsel or Party (Objection to Form of Order Waived)

_____  Date Opposing Party/Counsel was Served with Copy of
          Proposed Order and this Form: _____.

Order will be Tendered to the Court on:

*******************************************************************

_____  Return filed copy of order in enclosed self-addressed,
          stamped envelope to attorney who prepared order.

<u>  X  </u>  Call attorney who prepared order (tel. <u>334-0891</u>) when
          signed order can be picked up.

Attorney Preparing Order: <u>Robert A. Cox, Jr.</u>

Address: <u>227 W. TRADE ST., SUITE 1200</u>

City, State and Zip: <u>CHARLOTTE, NORTH CAROLINA 28202</u>

Telephone and Bar Number: <u>704/334-0891     N.C. BAR NO. 21998</u>

Representing: <u>DEBTOR</u>

**NOTICE TO ATTORNEYS: REPRODUCE THIS FORM ON GREEN STOCK AND TENDER IT WITH ORIGINAL AND FOUR COPIES OF ORDER. SUBMIT ORDER WITH EX PARTE MOTION. SUBMIT OTHER ORDERS ONLY AFTER EXPIRATION OF NOTICE OR OBJECTION PERIODS (IF APPLICABLE).**

{00076551 v 1}